***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer.
3. The carrier on the risk is Key Benefit Services.
4. Plaintiff's average weekly wage is $608.10, which yields a compensation rate of $405.42.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old and was not employed. Prior to January 15, 1999, plaintiff had been employed with defendant-employer as a carpet and floor covering installer.
2. On January 15, 1999 plaintiff was moving a desk when the desk slipped and fell on him resulting in an injury to his back.
3. The claim was accepted by the carrier pursuant to a Form 60 filed with the Commission on September 3, 1999.
4. Since January 15, 1999 plaintiff has received weekly benefits from the carrier in the amount of $405.42 for all weeks he has been out of work.
5. Prior to his January 15, 1999 incident, plaintiff received medical treatment for his back and/or radiating pain into his leg. Plaintiff was treated by Dr. Michael Nicks on September 8, 1998 for lumbar pain radiating into his buttocks and down his leg, with complaints of tingling in his toes. He returned on September 16, 1998 complaining of a worsening of his symptoms. Dr. Nicks at that time noted that plaintiff's MRI revealed a probable disk herniation with a migrated fragment on the right consistent with his symptomology.
6. After his compensable injury on January 15, 1999, plaintiff began treatment with Dr. Knapp at Hickory Orthopedic Center. Plaintiff complained of pain that was worse with activity and relieved by rest. He was diagnosed with lumbar strain sydrome and cervical spondylosis. Plaintiff was released to work at that time with restrictions. Plaintiff continued to work under restrictions through June 17, 1999 when Dr. Knapp took him out of work.
7. On May 20, 1999 plaintiff underwent an MRI which revealed multi-level degenerative disk disease, asymmetrical disk protrusion on the left at L2-3, facet arthritis, and broad based disk bulge causing persistent swelling of the exiting right L5 nerve root at the L5-1 level. Overall the findings were stable since the September, 1998 MRI.
8. Plaintiff was released to return to work by Dr. Knapp on July 13, 1999 on light duty. Plaintiff did not return to work at that time.
9. On July 28, 1999, plaintiff's treatment was transferred to Dr. Mark Hartman, a spinal surgeon with Miller Orthopedic Clinic. Dr. Hartman, after examining plaintiff, diagnosed segmental instability with secondary L3 nerve root pain and requested a CT scan.
10. The CT scan revealed significant spinal stenosis at L5-S1 and central stenosis at L4-5. According to Dr. Hartman, plaintiff's main complaint was low back pain. Dr. Hartman could not say that the findings on the CT scan explained plaintiff's neurological exam or complaints. Plaintiff had a soft tissue injury or lumbar strain, in addition to the spinal stenosis. Dr. Hartman did not recommend surgery or additional nerve blocks at that time, but plaintiff was taken back out of work by Dr. Hartman.
11. Thereafter, plaintiff underwent a Functional Capacity Evaluation which, according to Dr. Hartman, revealed that plaintiff was capable of a light duty job, lifting 20 pounds, push/pull of 40 pounds and requiring him to change positions every 45 minutes. On February 2, 2000 Dr. Hartman released plaintiff with those restrictions and gave him a five per cent permanent partial disability rating to his back. Dr. Hartman felt that plaintiff could perform carpet installation work but not engage in any heavy lifting due to his preexisting herniated disk.
12. Dr. Hartman expressed concern that there was a two-month delay in reporting symptoms of leg pain during the time plaintiff was being treated by a physician. Although stating that there was no hard and fast line for when radicular symptoms would begin, Dr. Hartman felt that these symptoms would begin fairly soon after the accident. Dr. Hartman also stated that the condition with which he diagnosed plaintiff could occur in the absence of any trauma.
13. Plaintiff was evaluated by Dr. Andrea Stutesman, a specialist in physical medicine and rehabilitation, on March 21, 2000. Dr. Stutesman diagnosed plaintiff's injury-related condition as being a probable low back strain, which was now resolved. Dr. Stutesman opined that the complaints of radicular symptoms that appeared two and one-half months after the injury could not be related to the injury but were likely related to his pre-existing back condition. Dr. Stutesman also opined that plaintiff showed signs of symptom magnification and submaximal effort on strength testing. Finally, Dr. Stutesman stated that if the only issue were the back strain, plaintiff would be able to return to work without restrictions.
14. Defendants then filed a Form 24 with the Commission on June 17, 2000 requesting that plaintiff's benefits be terminated on the grounds that plaintiff's current disability was unrelated to his work injury and that as far as his work injury was concerned, plaintiff had a full duty work release. The Commission was unable to reach a determination on the Form 24 application and ordered that the claim be placed on the Deputy Commissioner's hearing docket.
15. To the extent that the medical opinions of Drs. Hartman and Stutesman are in disagreement, the Commission gives greater weight to the opinions of Dr. Hartman.
16. In July 2000 plaintiff began vocational rehabilitation services with Gordon DeMarco through VocMed. Mr. DeMarco recommended that plaintiff be placed in a rehabilitation and retraining program at EconoForce in Conover. Dr. Hartman approved plaintiff's participation in the EconoForce program, which was designed to help improve work stamina.
17. Plaintiff began attending the EconoForce program on December 12, 2000. According to the testimony of Kaye Webster, plaintiff's supervisor at EconoForce, plaintiff's attendance at EconoForce was sporadic. Plaintiff never stayed at EconoForce more than an hour and 46 minutes. Throughout the month of December, plaintiff attended EconoForce six times.
18. In December 2000, Andy Wolfe of Absolute Surveillance conducted surveillance of plaintiff. Mr. Wolfe obtained video surveillance of plaintiff in activities consistent with installing floor coverings. Although plaintiff denied earning any wages as a result of the installation work, the Commission finds that plaintiff's activities demonstrate wage earning capacity.
19. On one of the days on which surveillance was conducted, December 27, 2000, plaintiff was engaged in activities that included cutting carpet, performing work on his hands and knees on the floor, rising from a kneeling/squatting position without the assistance of his hands and performing various other job duties. On that same day, plaintiff had reported to EconoForce and stayed for approximately 25 minutes, informing EconoForce that he had to leave because he was in a great deal of pain.
20. On November 28, 2000, plaintiff was ordered by Executive Secretary Tracey Weaver to participate in vocational rehabilitation, specifically the EconoForce program. Plaintiff's activities on December 27, 2000 as documented by EconoForce and through surveillance activity demonstrate that plaintiff was non-compliant with vocational rehabilitation efforts and therefore failed to comply with the order of the Industrial Commission.
21. Dr. Hartman and Dr. Stutesman both agreed that there was no medical basis for plaintiff's refusal to participate in the EconoForce program.
22. Dot Reid, one of the owners of Midway Carpet Distributors, Inc., testified at the hearing before the Deputy Commissioner that the videotape depicting plaintiff's activities in December of 2000 was consistent with activities required to lay carpet and/or floor covering, with the exception that plaintiff was not observed lifting any heavy items.
23. Plaintiff testified at the Deputy Commissioner hearing that he was unable to squat because of pain. However, the videotape of plaintiff repeatedly shows that plaintiff was able to squat and rise from a squatted position without assistance and with apparent ease.
24. At the hearing before the Deputy Commissioner, plaintiff demonstrated extreme pain behavior including an inability to sit for any period of time and walking around the courtroom in a bent position holding his back. The Deputy Commissioner found that plaintiff's pain behaviors in the courtroom were not credible, based upon his activities filmed in the videotape. Plaintiff did not exhibit any pain behaviors in the videotape. The Deputy Commissioner found that plaintiff's actions depicted in the videotape were more credible because plaintiff was not aware that he was being observed at that time. The Full Commission declines to reverse the credibility determinations of the Deputy Commissioner and finds that the videotape more accurately portrays plaintiff's physical capacity to work and earn wages than his pain behaviors exhibited at the hearing and his complaints of pain described in his testimony before the Deputy Commissioner. Plaintiff's testimony was not credible or convincing as to his inability to engage in the same or any other employment at the same wages.
25. Dennis Rooney, owner of Carpet Warehouse, Inc., testified at the Deputy Commissioner hearing that he was not on the premises with plaintiff during any time when plaintiff was working. Mr. Rooney testified that plaintiff did not work for him and that he had not paid plaintiff and wages. The videotape evidence contradicted Mr. Rooney's testimony and showed Mr. Rooney in the same room with plaintiff. Therefore, the testimony of Mr. Rooney concerning plaintiff's wage earnings is not credible.
26. Based upon the medical evidence that plaintiff is capable of returning to work with some restrictions, plaintiff's refusal to comply with rehabilitation efforts, and the videotape of plaintiff performing various physical activities, the Commission finds that as of December 12, 2000 plaintiff was no longer disabled and retained wage earning capacity.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on January 15, 1999 when a desk fell on him, pinning him to the floor. At that time, he sustained an injury to his back. N.C. Gen. Stat. § 97-2.
2. As a result of the compensable injury by accident, plaintiff was disabled and entitled to receive total disability compensation at the rate of $405.42 per week for the period January 15, 1999 until December 12, 2000, when he regained wage earning capacity. N.C. Gen. Stat. §97-29. To the extent that defendants have already paid this compensation, they are entitled to a credit for any payment of compensation after this period.
3. Defendants filed a Form 60 admitting compensability and liability for plaintiff's injury. The Form 60 does not entitle plaintiff to a presumption of continuing temporary total disability. Therefore, the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). Based upon the medical evidence that plaintiff is capable of returning to work as a carpet installer or in other employment within his restrictions, his refusal to comply with rehabilitation efforts, and plaintiff's ability to perform the various physical activities shown on the videotape, plaintiff retains wage earning capacity and has failed to prove continuing disability. See, Stone v. G G Builders, 346 N.C. 154,484 S.E.2d 365 (1997). As a result, defendants are entitled to stop temporary total disability benefits. N.C. Gen. Stat. § 97-29.
4. As the result of the compensable injury, plaintiff sustained a five percent permanent functional impairment to his back and is entitled to payment of compensation for fifteen weeks in the amount of $405.42 per week. N.C. Gen. Stat. § 97-31(23). Any overpayment of indemnity compensation shall be credited against payment of the rating.
5. Plaintiff is entitled to payment of medical expenses incurred as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his total disability, defendants shall pay plaintiff compensation in the amount of $405.42 per week from January 15, 1999 until December 12, 2000. Defendants are entitled to a credit for compensation already paid to plaintiff, including any compensation paid after this period.
2. Defendants shall pay compensation to plaintiff at the rate of $405.42 per week for fifteen weeks for the five percent permanent functional impairment to his back. Defendants are entitled to a credit for compensation already paid plaintiff.
3. Defendants shall pay for all medical treatment received by plaintiff as the result of the compensable injury.
4. Defendants shall pay the costs.
This the ___ day of January 2002.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ THOMAS J. BOLCH COMMISSIONER
 S/______________ BUCK LATTIMORE CHAIRMAN